## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

Civil Action Number: 6:18-CV-255-ORL-37-TBS

JOEL PRICE,

     Plaintiff,

vs.

FLORIDA CAPITAL BANK, N.A.
d/b/a www.floridacapitalbank.com,

     Defendant.

---

## COMPLAINT

---

COMES NOW Plaintiff Joel Price ("Plaintiff"), by and through his undersigned counsel, and hereby files this Complaint and sues Defendant Florida Capital Bank, N.A. ("Defendant") for injunctive relief, attorney's fees and costs (including, but not limited to, court costs and expert fees) pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§s 12181-12189 ("ADA"), 28 C.F.R. Part 36 and alleges as follows:

### INTRODUCTORY STATEMENT

1.     Plaintiff brings this action in Federal Court to stop the marginalization of blind, vision impaired, and low vision patrons of Defendant Florida Capital Bank, N.A.'s business.

2.     Banking institutions can make choices (unlike visually impaired individuals) and can either make their business inclusive, or they can make them effective

**Zones of Discrimination** and exclude the visually-impaired.

3.    When banking institutions do not take steps necessary to notice people of their bank's limitations to provide effective services for the disabled they are actively excluding them from their business, which in fact segregates the disabled into being non-participants, i.e.: second-class citizens.

4.    This case arises out of the fact that Defendant has operated its bank in a manner and way that completely excludes individuals who are visually impaired from access to Defendant's business.

5.    Defendant owns and operates places of public accommodation which are federally insured banking institutions (banks) under the brand name "Florida Capital Bank." Florida Capital Banks offer financial products and services to the public, which are heretofore referenced as "financial products and services."

6.    This complaint seeks declaratory and injunctive relief to correct Defendant's policies and practices to include measures necessary to ensure compliance with federal law, to provide auxiliary aids and services for effective communication in Defendant's business (which includes Defendant's Website and the PDF documents within that Website) so that individuals who are blind or visually impaired can communicate with Defendant effectively and timely such that their access to Defendant's places of public accommodation (Defendant's Florida Capital Banks) are not impeded; as such impediment has rendered Defendant's physical banking locations not fully accessible to the visually impaired.

## JURISDICTION & VENUE

7.    This is an action for declaratory and injunctive relief pursuant to Title III

of the ADA, 42 U.S.C. §§12181-12189, 28 U.S.C. § 1331, 28 C.F.R. § 36.201 and to prevent discrimination which includes equal access and effective communications with Defendant's banking business.

8.     Venue in this Court is proper pursuant to 28 U.S.C. §1391(b) because the Defendant is conducting business within the jurisdiction of this court by virtue of the fact its website is available to the general public within this district and the acts constituting the violation of the ADA occurred in this District. Further, several of the Defendant's banks are located in the district.

9.     Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§s 2201 and 2202.

## THE PARTIES

1.     Plaintiff Joel Price is a resident of the state of Florida and resides within the Southern judicial district, is *sui juris*, is disabled as defined by the ADA.

2.     Plaintiff is legally blind and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.* and in 42 U.S.C. 3602, §802(h). Plaintiff is substantially limited in performing one or more major life activities, including (but not limited to) accurately visualizing his world and adequately traversing obstacles.

3.     Due to his disabilities, the Plaintiff requires the use and accompaniment of a service animal, as his service animal is a trained seeing-eye dog. Plaintiff's requirement for use of a service animal is defined by 28 C.F.R. §36.104 and Florida Statue §413.08(1)(d).

3

4.      Plaintiff cannot use the computer/internet without the assistance of commercially available screen reader software to interface with the internet and websites located therein.

5.      Plaintiff requires that electronic document information be saved in an accessible format such as HTML or an accessible PDF format.

6.      Defendant Florida Capital Bank is the owner and operator of financial institutions under the brand name "Florida Capital Bank." Defendant owns and/or operates four Florida Capital Bank locations within the State of Florida, and five retail mortgage lending offices throughout the United States. The Defendant's corporate office is located at the Jacksonville, Florida bank branch.

7.      Defendant Florida Capital Bank, N.A. is a subsidiary of Florida Capital Group, Inc., which operates as a bank holding company which earned a net income of $2.1 million for the last reporting year (2015).

## FACTS

8.      Defendant is defined as a "Public Accommodation" within meaning of Title III because Defendant Florida Capital Bank, N.A. is a private entity which owns and/or operates an "other service establishment," 42 U.S.C. §12181(7)(F) and 28 C.F.R. §36.104(2).

9.      Each of Defendant's Florida Capital Banks are open to the public and each bank is a place of public accommodation subject to the requirements of Title III of the ADA and its implementing regulation as an "other service establishment" as defined by 42 U.S.C. §12181(7)(F); §12182, and 28 C.F.R. Part 36. Defendant's Florida Capital

Banks are also referenced throughout as "Place(s) of Public Accommodation," or "Florida Capital Bank(s)."

10.    Defendant is defined as a "Public Accommodation" within meaning of Title III because Defendant Florida Capital Bank, N.A. is a private entity which owns and/or operates Florida Capital Banks defined under 42 U.S.C. §12181(7)(F) and 28 C.F.R. §36.104(2).

11.    Defendant controls, maintains, and/or operates a collection of related web pages, including multimedia content, typically identified with a common domain name, and published on at least one web server; namely the domain located at a website called www.floridacapitalbank.com ("Website").

12.    Defendant's Website is an electronic on-line bank which permits the public to obtain information on Florida Capital Bank financial products and services from the Website such as checking, savings and money market accounts, certificates of deposit, retirement accounts, online banking including online bill pay, alerts, online transfer funds, e-Statements, mobile banking, Florida Capital Bank credit cards with reward points, business banking products, a variety of loans, and other information Defendant is interested in communicating to the public. While online through Defendant's Website, the public can also locate a Florida Capital Bank branches, learn about financial products and services by accessing Defendant's online education center and accessing an electronic video library (for an education in finances[1]), re-order checks online, and contact a Florida Capital Bank representative.

---

[1] https://www.floridacapitalbank.com/education

13.    For all of the reasons as delineated herein, clearly, the Website is an integral part of the financial products and services offered by Defendant. By this nexus, the Website is characterized as a Place of Public Accommodation pursuant to Title III, 42 U.S.C. §12181(7)(F) of the ADA[2]. As such, the Website must comply with all requirements of the ADA.

14.    At all times material hereto, Defendant Florida Capital Bank, N.A. was (and is) an organization owning and operating the Website. Since the Website is open through the internet to the public as part of its banks (Places of Public Accommodation), Defendant (as the owner and/or operator of the Website) is defined as a "Public Accommodation" within meaning of Title III, 42 U.S.C. §12181(7)(F) and 28 C.F.R. §36.104(2). As such, Defendant has subjected itself and the Website it has created and maintains to the ADA.

15.    Defendant offers the public access to its electronic documents online though Portable Document Format, which is commonly referred to as "PDF documents or PDFs."

16.    Within Defendant's Website the public can access provided electronic documents on demand. Defendant offers the public access to its electronic documents online though Portable Document Format, which is commonly referred to as "PDF documents or PDFs."

17.    Blind and/or visually impaired persons require assistive devices and/or

---

[2] "The Department of Justice has long taken the position that both State and local government Websites and the websites of private entities that are public accommodations are covered by the ADA. In other words, the websites of entities covered by both Title II and Title III of the statute are required by law to ensure that their sites are fully accessible to individuals with disabilities." ( See: Statement of Eve Hill Senior Counselor to the Assistant Attorney General for the Civil Rights Department of Justice - Before the Senate Committee on Health, Education, Labor & Pensions United States Senate – Concerning The Promise of Accessible Technology: Challenges and Opportunities – Presented on February 7, 2012.

auxiliary aids (such as screen reader software) to read/comprehend when there are provided in Portable Document Format, or "PDF documents."

18.    The PDF documents offered on Defendant's Website are not coded for accessible to screen reader software.    Therefore, online demand viewing of PDF documents on Defendant's Website is not an option available to persons with vision disabilities.

19.    Plaintiff is a customer who is interested in opening up a bank account (and other financial products and services) such as offered at Florida Capital Bank physical locations.

20.    Plaintiff called Defendant to inquire about banking services available at Florida Capital Bank's physical bank location at 1000 Legion Place, Suite 1250, Orlando, Florida 32801, specifically, opening a bank checking account and obtaining a Florida Capital Bank credit card. However, Defendant's representative failed to fully assist Plaintiff and referred him to its Website.

21.    Following communications with Defendant's representative, Plaintiff attempted to utilize Defendant's Website as instructed by Defendant's representative.

22.    Plaintiff utilizes screen reader software, which when utilized allows him (as a blind individual) to communicate with internet websites and the ability to access/comprehend PDF documents.

23.    When Plaintiff tried to interact and engage the Defendant through its Website, he encountered a Website that was not designed with accessibility (for the disabled) in mind.

24.     Defendant's Website is not designed with consideration for Universal design. Universal design is necessary so visually impaired individuals who use screen reader software can access the Website[3].

25.     Defendant's Website was inaccessible so Plaintiff could not find out what information he needed to bring to Defendant's bank location in order to open a bank account, savings account, or apply for a credit card.

26.     Plaintiff has tried and has been unable to access and comprehend the Defendant's Website and the electronic documents located therein.

27.     Plaintiff's expectation of participating in online banking and online bill pay was destroyed since he could not access Defendant's Website at all to avail himself of the latest banking services which Defendant offers to the public.

28.     The fact that Plaintiff could not access the Defendant's Website and the PDF documents contained therein left Plaintiff excluded from accessing the financial products and services available from Defendant and further left him with the feeling of segregation, rejection, isolation, and unable to participate in his own business affairs (such as in this case opening up a personal checking account) in a manner equal to that afforded to others who are not similarly disabled.

29.     This inability to participate in Defendant's financial products and services has resulted in a *virtual barrier* which has created a *concrete barrier* to access to Defendant's banks and to the financial products and services offered by Defendant. Plaintiff's inability to fully use Defendant's Website and their inability to access

---

[3] "Universal design is the design of products and environments to be usable by all people, to the greatest extent possible, without the need for adaption or specialized design." Kalbag, Laura (2017), by *Accessibility for Everyone*, (p. 5)

Defendant's PDF documents (to learn about Defendant's financial products and services prior to entering Defendant's banks) has hindered, impeded and inhibited Plaintiff's access (physical entry) to Defendant's physical bank locations. Plaintiff has suffered as a result.

30.     Plaintiff's inability to access and use Defendant's Website and the PDF documents contained therein has impaired, obstructed, hindered, and impeded his ability to engage in banking in the same manner as provided to members of the public by the Defendant; as such Plaintiff has suffered particularized harm and an injury in fact.

31.     Plaintiff's inability to communicate with/comprehend Defendant's electronic documents and Website (in general) has impeded Plaintiff's access to Defendant's financial services and products which Defendant offers to the public and has impeded Plaintiff's ability to patronize Defendant's physical bank locations. As such, Plaintiff (and others with vision impairments) will suffer continuous and ongoing harm from Defendant's omissions, policies, and practices set forth herein unless enjoined by this Court.

32.     By denying Plaintiff the opportunity to comprehend PDF documents and Website (in general) due to Plaintiff's disability (visual impairment), Defendant has denied Plaintiff the opportunity to participate in or benefit from the financial services and products afforded to the public (non-disabled persons and persons who are not visually impaired).

33.     On information and belief, Defendant has not initiated an ADA policy for effective communication to insure full and equal use of their business by individuals with disabilities.

34.     On information and belief, Defendant has not designated an employee as an Accessibility Coordinator to insure full and equal use of its electronic documents and Website (in general) by individuals with disabilities.

35.     On information and belief, Defendant has not created and instituted a Specialized Customer Assistance line, nor service, or email contact mode for customer assistance for the visually impaired.

36.     On information and belief, Defendant has not created a Website page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how the Defendant will have the www.floridacapitalbank.com website accessible to the visually impaired community.

37.     On information and belief, Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of its electronic documents and Website (in general).

38.     On information and belief, Defendant has not offered any form of electronic documents in an accessible format for blind or visually impaired individuals.

39.     Thus, Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations provided at its banks.

40.     All Public Accommodations must insure that their *Places of Public Accommodation* provide **Effective Communication** for all members of the general public, including individuals with disabilities.

41.     The broad mandate of the ADA to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet websites, such as the

www.floridacapitalbank.com website.[4] That mandate also extends to documents that Defendant provides to the public, including those documents provided in PDF format.

42. On information and belief, the Defendant is aware of the common access barriers and barriers to effective communication within its Auxiliary Aids and Services which prevent individuals with disabilities who are visually impaired from the means to comprehend the information presented therein.

43. Defendant has acted with deliberate indifference for the provisions of the ADA in regard to the unlawful practices described herein because Defendant is aware of the availability of computer programs which allow Defendant to save PDF documents in an accessible format and has failed to reasonably modify its policies, processes and procedures for the same.

44. Defendant and alike money center banks are fully aware of need to provide full access to all visitors to its www.floridacapitalbank.com website.[5]

45. Such barriers result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired and in punishment and isolation of blind and low vision individuals from the rest of society.

---

[4] Congress expressly stated when passing the ADA, "the types of accommodation and services provided to individuals with disabilities, under all of the titles of this bill, should keep pace with the rapidly changing technology of the times" and technological advances "may require public accommodations to provide auxiliary aids and services in the future which today would not be required.

[5] Major Retailing Trade Magazines have been publishing articles to alert retailer of the need to update their websites in light of current legal trends and cases e.g. (https://www.digitalcommerce360.com/2016/04/01/web-accessibility-what-e-retailers-need-know/), (www.retailingtoday.com/article/lawsuit-highlights-importance-ada-compliance )

46.    According to the National Federation for the Blind[6], there are over seven million Americans with visual disabilities (which makes up 2.3% of the population), and there are 486,400 individuals with visual disabilities living within the state of Florida[7].

47.    Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove and this suit for declaratory judgment and injunctive relief is his only means to secure adequate redress from Defendant's unlawful and discriminatory practices. No price can be put on Plaintiff's inability to investigate, compare and obtain financial products and services themselves.

48.    Notice to Defendant is not required as a result of Defendant's failure to cure the violations. Enforcement of the rights of Plaintiff is right and just pursuant to 28 U.S.C. §§ 2201, 2202.

49.    Joel Price has retained the civil rights law office of Scott R Dinin, P.A. and has agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred.

## COUNT I – VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT

50.    Plaintiff Joel Price re-alleges and incorporates by reference the allegations set forth herein above.

### Requirement for Effective Communication

51.    It is irrefutable that the ADA and implementation of ADAAG requires that

---

[6] See https://nfb.org/blindness-statistics
[7] 486,400 is the number of non-institutionalized (male and female, all ages and ethnicities) reported to have a visual disability in 2015; see https://nfb.org/blindness-statistics

Public Accommodations (and Places of Public Accommodation) are required to ensure that communication is effective.

52.    According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services includes "voice, text, and video-based telecommunications products and systems." 28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

53.    Section 28 C.F.R. §36.303(c) specifically states that public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities. "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

54.    Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

55.    Defendant's Website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication.

**Defendant's Business is A Place of Public Accommodation**

56.    By virtue of the fact that Defendant's Florida Capital Banks are open to the public, each banking location is a place of public accommodation subject to the

requirements of Title III of the ADA; 42 U.S.C. §12181(7)(F). Therefore, Florida Capital Banks are each a Place of Public Accommodation. The ADA prohibits any and all barriers which would limit access by the visually impaired to such places of public accommodation.

57.     The virtual barrier to access is just as real as a physical barrier to access, for without information as to the financial products and services offered by Defendant's banks and ability to investigate and choose a bank and bank products, the visually impaired have no access to Defendants bank to open a savings/checking account, apply for a loan, obtain a Florida Capital Bank credit card, learn about the associated reward points, and other accommodations of that Defendant's Florida Capital Bank offers to the public.

**The Website As A Place of Public Accommodation**

58.     Consistent with the text and legislative history of the ADA, the Department of Justice has long affirmed the application of Title III of the ADA to websites of public accommodations[8]; see Statement of Interest filed by the Department in *Juan Carlos Gil v Winn Dixie Banks, Inc.* No. 16-cv-23020 [DE #23].

59.     District courts within the Eleventh Circuit that have considered the

---

[8] *See generally* Statement of Interest of the United States, *Nat'l Assoc. of the Deaf v. Netflix, Inc.*, 869 F. Supp. 2d 196 (D. Mass. 2012) (No. 3:11-cv-30168), available at www.ada.gov/briefs/netflix_SOI.pdf (discussing the Department's history of public pronouncements on the topic); *see also* Consent Decree, *Nat'l Fed. of the Blind and United States v. HRB Digital LLC and HRB Tax Group, Inc.*, No. 1:13-cv-10799-GAO (entered March 25, 2014), available at www.ada.gov/hrb-cd.htm (comprehensive decree governing the accessibility of H&R Block's website); *Settlement Agreement Between United States and Ahold U.S.A. Inc. and Peapod LLC* (11/17/14), available at https://www.ada.gov/peapod_sa.htm (agreement addressing accessibility of online grocery service).

question of whether websites are public accommodations have uniformly held that websites are subject to the ADA if a plaintiff can establish a nexus between the website and the physical premises of a public accommodation. See, *Juan Carlos Gil v Winn Dixie Banks, Inc.* No. 16-cv-23020 [DE #32] Order Denying Defendant's Motion for Summary Judgment, quoting from *Plaintiff v. Bang & Olufsen Am., Inc.,* No. 16-23801 at 9 (citing *Rendon v. Vallycrest Prods., Inc.* 249 F.3d 1279 (11th Cir. 2002) for the proposition that if a plaintiff establishes some nexus between the website and the physical place of public accommodation, the plaintiff's ADA claim can survive a motion to dismiss).

60.    The Courts have held that, when services available on an internet website have a connection to a physical Place of Public Accommodation, that website falls within the ADA's *Place of Public Accommodation* requirement; *Peoples v Discover Financial Services, Inc.*, 2009 WL 3030217, 2 (E.D. Pa. 2009).

61.    The www.floridacapitalbank.com website is a *Place of Public Accommodation* pursuant to 42 U.S.C. §12181(7)(F) as an integral part of Defendant's Florida Capital Banks by providing the public information on the physical location of Florida Capital Banks, and offers the public the ability to be become educated as to the financial products and services Defendant's banks, and permits the user to view account information online, pay bills online, and permits the user to locate a Florida Capital Bank branch, learn about Florida Capital Bank financial services from their online video library regarding financial education, and reorder checks online.

62.    As delineated above and pursuant to 42 U.S.C. §§s 12181(7)(F), Defendant is a *Public Accommodation* under the ADA because Defendant owns and/or operates the www.floridacapitalbank.com website, as defined within §12181(7)(F).

63.    In addition, Defendant's representatives within its bank locations have referred customers to Defendant's Website for additional information, as the Website provides information regarding financial products and services, online banking, personal banking education, bank branch locations, and reordering checks, such that the Website is an integral part of the public's needs with respect to Defendant's business.

64.    By Defendant's representatives referring the public /visually impaired individuals to its Website for reference to information on financial products and services, goods and accommodations instead of providing such information at the physical bank locations, the Website has been rendered an integral part of Defendant's physical bank locations. Thus, the failure of that Website and the PDF documents contained therein to be accessible to visually impaired individuals impedes visually impaired individuals (such as Plaintiff) from access to Defendant's physical bank locations.

65.    It is clear that the ADA applies to the Defendant's Website, as the Website is a *Place of Public Accommodation* for the following reasons: (1) the statutory construction of the ADA demonstrates its applicability is not limited to physical "brick and mortar" locations; (2) Congress' intent was for the ADA to be responsive to changes in technology; and (3) the Department of Justice has interpreted the ADA to apply to websites.

66.    The ADA's legislative history makes it clear that Congress intended the ADA to adapt to changes in technology, such as the technology afforded through websites, the internet and e-commerce. Congress has stated that "the types of accommodation and services provided to individuals with disabilities . . . ***should keep pace with the rapidly changing technology of the times.***" *Nat'l Ass'n of the Deaf v.*

*Netflix, Inc.,* 869 F. Supp. 2d at 200 (D. Mass. 2012)[9] *Netflix,* (citing H.R. Rep. 101-485(II), at 108 (1990)); *Nat'l Fedn. of the Blind v. Scribd Inc.,* 97 F. Supp. 3d, 574 (same) (D. Vt. 2015)[10] (emphasis added). For example, Congress identified "information exchange" (the principal function of a website) as an important area of concern where expanding technology would be subject to the ADA. *Scribd,* 97 F. Supp. 3d at 574 (citing H.R. Rep. 101-485(II), at 108 (1990)).

67.     Recent case law supports that the intangible barriers presented within Defendant's Website and PDF documents therein are violative of the ADA and presented by Defendant's failure to make its Website/PDF documents accessible to visually impaired individuals. In rendering his decision that Winn Dixie Banks, Inc.'s website contained barriers to access which are prohibited by the ADA[11], Judge Scola drew upon the decision in *Rendon v. Valleycrest Prods., Inc.* 294 F.3d 1279, 1284 n.8 (11th Cir. 2002), where the Eleventh Circuit noted that the plain language of Title III of the ADA covers both tangible, physical barriers that prevent a disabled person from accessing a public accommodation, as well as "**intangible barriers**, such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the defendant entity's goods, services and privileges . . . ." 249 F.3d at 1283 **(emphasis added)**.

---

[9] the plaintiff sued Netflix, Inc., ("Netflix") under Title III of the ADA based on Netflix's failure to provide equal access to its video streaming website "Watch Instantly" for deaf and hearing impaired individuals. There, the plaintiff alleged the website itself was a place of public accommodation because the website qualifies as a "place of exhibition and entertainment," "place of recreation," "sales or rental establishment," and "service establishment" as enumerated by the ADA. *Id.* at 200.

[10] wherein the plaintiff filed a complaint alleging a violation of the ADA against Scribd, Inc., ("Scribd"), in that it provided a digital library operating reading subscription services on its websites and mobile app which were incompatible with reader software and denied blind persons' access to Scribd's services

[11] *Juan Carlos Gil v Winn Dixie Stores, Inc.* No. 16-cv-23020 [DE #63].

68.     At the present time and since the Website's inception, Defendant has provided inadequate service, and ineffective communications and services. Plaintiff's injuries are real, have occurred, and are continuing. Plaintiff's injuries will continue to occur until it is absolutely clear that Defendant's wrongful behavior is remedied.

69.     Recent Case law supports the Plaintiff's position: that companies which have not fully updated their websites and PDF documents therein so that they are accessible to visually impaired individuals are not immune to redress. Plaintiff's position is further supported by recent case law which states that organizations which that have not fully updated their electronically supplied information (including but not limited to PDF documents). See, *Lucia Markett v. Five Guys Enterprises LLC* No. 17-cv-788 [DE #33] Order Denying Defendant's Motion To Dismiss, where the Honorable Judge Katherine B. Forrest rejected the defendant's argument that Five Guys' in-process renovation of its website which will eventually result in its website being accessible to plaintiff and other blind and visually impaired individuals (after the renovation is complete) rendered plaintiff's claim as moot.

70.     Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

71.     Unlawful discrimination includes "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to

individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations." 42 U.S.C. § 12182(b)(2)(A)(II).

72.    Unlawful discrimination also includes "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden." 42 U.S.C. § 12182(b)(2)(A)(III).

**Barriers to Access**

73.    As a result of the inaccessibility of Defendant's Website and failure of the PDF documents contained therein to be accessible to visually impaired individuals, those visually impaired individuals are denied full and equal access to Florida Capital Bank physical locations and Florida Capital Bank online services as Defendant has made available to the public through the information provided on Defendant's Website, in derogation of 42 U.S.C. §12101 et. seq., and as prohibited by 42 U.S.C. §12182 et. seq.

74.    Defendant's Website is not accessible to users who are visually impaired such that visually impaired are unable to go to the Website and obtain the most perfunctory information such as what banking products and services are offered, what interest rates are available for savings/money market accounts, what type of credit cards the bank offers to its customers with their associated reward options, and information

about financial education which the Florida Capital Bank provides to its customers in its video library.

75.    More violations may be present on other pages of the Website, and they will be determined and proven through the discovery process.

76.    Further, the Website does not offer include the universal symbol for the disabled[12] which would permit disabled individuals to access the Website's accessibility information and accessibility protocols.

77.    There are readily available, well established guidelines on the Internet for making websites accessible to the blind and visually impaired. Incorporating the basic components to make its Website and PDF documents contained therein accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to the Defendant.

**PDF Documents**

78.    Defendant's website contains one or more links to a PDF attachment.   An example of one such link is their "How to Stay Safe During Tax Season" Guide located at https://www.floridacapitalbank.com/sites/default/files/FLCB_Tax%20Season_2018.pdf. In addition, the Defendant's Privacy Policy is only accessible in PDF at https://www.floridacapitalbank.com/sites/default/files/FLCB-Privacy-Notice-2013-RevOct.pdf. The PDF attachment's flat surface does not contain accessible coding. The PDF document does not include a text-based format (or equivalent). Defendant has not

---

[12]  , or HTML "Accessibility" link for those individuals who are visually impaired

added 'alt[13]' tags or long descriptions for the PDF within its website. The PDF attachment has not been provided in HTML or with a text equivalent, and is not a webpage[14], therefore, it is inaccessible to the visually impaired.

79.    In order to meaningfully access PDF documents, blind and visually impaired individuals require that PDF documents be saved in an accessible format. Much of the content provided in PDF format within Defendant's Website is not accessible for persons with screen readers.

80.    Providing PDF documents in a format that can be recognized by screen reader software and therefore making those PDF documents accessible to the visually impaired would not result in any undue burden to Defendant.

81.    Providing PDF documents in a format that can be recognized by screen reader software and therefore making those PDF documents accessible to the visually impaired would not fundamentally change the nature of Defendant's financial products and services.

82.    The failure of Defendant's PDF documents to be accessible impedes Plaintiff (and other similarly situated visually impaired individuals) from fully accessing the financial services, goods and accommodations provided by Defendant and in so doing, Defendant has discriminated against the visually impaired.

**Violations of the ADA**

83.    The Defendant has violated the ADA (and continues to violate the ADA)

---

[13] 'alt' refers to 'alternative text'

[14] (which is an internet document usually in HTML)

by creating barriers for individuals with disabilities who are visually impaired and who require the assistance of interface with screen reader software to comprehend and access Defendant's electronic (PDF) documents and Website (in general). These violations are ongoing.

84. As a result of the inadequate development and administration of Defendant's Website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303 to remedy the discrimination.

85. Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff Joel Price injunctive relief; including an order to:

a) Require Defendant Florida Capital Bank, N.A. to adopt and implement a web accessibility policy to make publically available and directly link from the homepage of the www.floridacapitalbank.com website to a statement as to the Defendant's policy to ensure persons with disabilities have full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations through its Website.

b) Require Defendant Florida Capital Bank, N.A. to take the necessary steps to make the Website readily accessible to and usable by visually impaired users, and during that time period prior to the www.floridacapitalbank.com website's being readily accessible, to provide an alternative method for individuals with visual impairments to access the information available on the Website until such time that the requisite modifications are made, and

c) Require Defendant Florida Capital Bank, N.A. to provide the appropriate auxiliary aids such that individuals with visual impairments will be able to

effectively communicate with the Website for purposes of viewing and locating Florida Capital Banks (locations) and becoming informed of and signing up for Florida Capital Bank financial services online, and of viewing PDF documents provided to the public within Defendant's Website. During that time period prior to the Website's being designed to permit individuals with visual impairments to effectively communicate, requiring Defendant to provide an alternative method for individuals with visual impairments to effectively communicate so they are not impeded from obtaining the financial products, goods, services and accommodations made available to the public through Defendant's Website and through Defendant's physical banking locations.

86.    Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have reasonable attorneys' fees, costs and expenses paid by Defendant Florida Capital Bank, N.A..

## DEMAND FOR RELIEF

**WHEREFORE,** Plaintiff Joel Price hereby demands judgment against Defendant Florida Capital Bank, N.A. and requests the following injunctive and declaratory relief permanently enjoin Defendant Florida Capital Bank, N.A. from any practice, policy and/or procedure which will deny Plaintiff (and other individuals with visual impairments) equal access to, and benefit from Defendant's services, programs, activities and facilities, as well as:

a) The Court issue a declaratory judgment that Defendant has violated Plaintiff's rights as guaranteed by the ADA;

23

b) The Court enter an Order requiring Defendant to update its www.floridacapitalbank.com website to remove barriers in order that individuals with visual disabilities can access the Website and effectively communicate with the Website to the full extent required by Title III of the ADA;

c) enter an Order requiring Defendant to update all PDF documents made available to the public to remove barriers in order that individuals with visual disabilities can access the PDF documents to effectively communicate with Defendant to the full extent required by Title III of the ADA;

d) pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504(a), enter an Order for permanent injunction which directs Defendant to take all steps necessary to bring the PDF documents which it provides on its electronic media into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that all PDF documents are fully accessible to, and independently usable by, blind and low sighted individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law;

e) The Court enter an Order requiring Defendant to clearly display the universal disabled logo[15] within its Website, wherein the logo would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations. Such a clear display of the disabled logo is to insure that individuals who are disabled are aware of the availability of the accessible features of the www.floridacapitalbank.com website;

f) The Court enter an Order compelling Defendant to contract with an independent ADA expert/consultant for the purposes of that ADA expert/consultant review Defendant's policies, practices and procedures for five years commencing from the date of the Court's Order to insure that Defendant is in compliance with the ADA;

g) The Court enter an order requiring Defendant to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto;

h) enter an Order requiring Defendant retain a qualified consultant acceptable to Plaintiff ("Mutually Agreed Upon Consultant") who shall assist it in improving the accessibility of its PDF documents so they are accessible to individuals with visual disabilities;

i) require Defendant engage a (mutually agreed upon) Consultant to perform an automated accessibility audit on a periodic basis to evaluate whether

---



15

Defendant's PDF documents continue to be accessible to individuals with visual disabilities;

j) The Court enter an Order directing Defendant to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time so as to allow Defendant to undertake and complete corrective procedures to the Website;

k) The Court award damages in an amount to be determined at trial;

l) The Court to award Plaintiff reasonable litigation expenses and attorneys' fees; and

m) That the Court award such other and further relief as it deems necessary, just and proper.

Dated this 14th day of February, 2018.

Respectfully submitted,

Scott R. Dinin, Esq.
Scott R. Dinin, P.A.
4200 NW 7th Avenue
Miami, Florida 33127
Tel: (786) 431-1333
inbox@dininlaw.com
*Counsel for Plaintiff*